UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION

PROCCOR PHARMACEUTICALS, INC.,

Plaintiff,

v.    Case No. 8:22-cv-02227-SDM-SPF

WORLD HEALTH PRODUCTS, LLC dba GAT SPORT and VITAMIN SHOPPE INDUSTRIES LLC, dba THE VITAMIN SHOPPE

Defendants.

### DEFENDANTS, WORLD HEALTH PRODUCTS, LLC AND VITAMIN SHOPPE INDUSTRIES INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff asserts that to prove fair use, Defendants must prove that there were no other phrases they could have used. Dkt. No. 182, p. 2 of 26. That is not the law. See, e.g., *Int'l Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274, 2006 U.S. App. LEXIS 17975, *9, (11th Cir. 2006)("A fair-use defense is established if a defendant proves that its use is "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.").

Plaintiff argues that Defendants cannot establish its fair use defense because it has not produced any evidence that "consumers recognize" the image of the red, white and blue ice pop and know its flavor profile. Dkt. No. 182, p. 13 of 26. Such evidence is not required. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1363-1364, 2019 U.S. App. LEXIS 11877, *35-37, (11th Cir. 2019). In dispensing with that same argument, the Court in *Hard Candy* affirmed the district court's

1

finding that the phrase was used in a descriptive sense because of the overall context of its use-lettering, type style, placement on the product and size. That is the same here.

In addition, the evidence here is even greater than the evidence of consumer recognition. Here, the undisputed evidence is that Mr. Krigsman himself recognized the flavor profile of the ice pop. He used the phrase "Freedom Pop" to describe the flavor of Plaintiff's product on numerous occasions- including, numerous emails and social media posts, and the webpage of the product-coupled with the image of the ice pop on the label for a product whose flavor profile matched the flavor profile of the ice pop.

Plaintiff argues that GAT used "Freedom Pop" in a trademark sense because of two social media posts that that use the phrase "Freedom Pop" without also expressly stating it's a flavor (in contrast to Mr. Krigsman's own social media posts that describe "Freedom Pop" as a "flavor"). Dkt. No. 182, p. 13 of 26 (relying on Dkt. Nos. 168-17 & 182-4, p. 4 of 6).  That argument misstates the record.

Both of the referenced posts clearly identify the origin of the product as GAT. They specifically have an image of the product label which displays both the GAT Sport™ and Nitraflex ® trademarks. One of the two posts, Dkt. No. 168-17, also has the image of the label with the stock image of the ice pop as well as a separate stock image of the ice pop in the body of the post itself.

2

Citing *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1274, 2015 U.S. Dist. LEXIS 111701, *10-11 & 13 (M.D. Fla. 2015) plaintiff asserts that a defendant cannot establish good faith even where it identifies the source of the product with its own marks. That is an overstatement of the *PODS* holding. In *PODS*, there was direct evidence that defendants deliberately set out to use the infringing phrase in order to trade off of plaintiff's reputation and goodwill. There is no evidence Proccor had any reputation or goodwill let alone evidence that GAT was trying to capitalize on it.

Plaintiff argues that the failure to employ a non-infringing alternative, where available, is sufficient to raise a question of fact as to good faith for the purposes of the fair use defense. Dkt. No. 182, p. 14 of 26. Plaintiff ignores that the standard for good faith for fair use asks whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services. *Int'l Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274, 2006 U.S. App. LEXIS 17975, *10 (11th Cir. 2006). Whether another viable alternative existed here or not, there is no evidence that GAT attempted to identify Plaintiff as the source of its product.

Cherry picking snippets of deposition testimony, Plaintiff asserts that GAT's witnesses "testified that the words 'Freedom Pop' do not describe the taste". Dkt. No. 182, p. 1 of 26. That is not accurate.

3

First, Max Fairchild testified that the reason "Freedom Pop" was used was to describe a new flavor. Tr. Fairchild, p. 10; 11-14, attached as Exhibit A. Cory Green testified that the phrase "Freedom Pop" was used as a flavor descriptor. Tr. Green pp. 37; 8-13 & 43; 6-10, attached as Exhibit B.

Max Fairchild was responsible for the flavor. Ex. A, Tr. Fairchild, p. 10; 2-5. He was unequivocal that the "Freedom Pop" flavor was the red, white and blue ice pop:

> So, I'm given a task to do a Bomb Pop flavor for -- you know, a red, white and blue pop for the company. Right? I don't know if you're familiar with what a red, white and blue Bomb Pop is, but I'll be happy to tell you. It's blue raspberry, cherry and lime. Those are what those three flavors represent on every company's product like that.

*Id.* at 10; 15-20. He then explained that GAT's flavor name became "Freedom Pop" because it was released around July 4th. *Id.* at p. 20; 5-13.

Plaintiff argues that jurors could conclude that GAT took the idea of the name "Freedom Pop" from Plaintiff's website. Dkt. No. 182, p. 7 of 26. There is, of course, no evidence in the record that any GAT witness ever heard of Proccor, knew that Proccor had a "Freedom Pop" flavor or ever looked at Proccor's website. Plaintiff's argument is based solely on the fact that witnesses could not identify who actually came up with the name.

4

As discussed above, Mr. Fairchild explained how GAT arrived at the name. It was to describe a product with the "Bomb Pop" flavor profile with a slight modification of the name to capitalize on the first Covid-era July 4th holiday.

In addition, although justifiable inferences can be drawn in favor of the nonmoving party in a summary judgment motion, inferences based upon speculation and conjecture cannot. *Zhanadova v. Wal-Mart Stores E., LP,* 2023 U.S. App. LEXIS 26636, *8-9, 2023 WL 6534188 (11th Cir. 2023). The failure to recall who came up with the idea to use the phrase "Freedom Pop", when there were at least 13 other companies using the same phrase, does not mean it is reasonable to assume the idea came from Plaintiff's website. There isn't any correlation at all between what we know, and the inference Plaintiff seeks.  It is pure speculation.

Plaintiff argues that GAT used the phrase "Freedom Pop" knowing that that Plaintiff owned the trademark. Dkt. No. 182, p. 8 of 26. This is based solely on the fact that GAT had labels reviewed by counsel. *Id.* at p. 9 of 26. There is no evidence that was done here. Plaintiff also leaves out, however, that the review had to do with ingredients and claims. Tr. Post, p. 27; 11-22, attached as Exhibit C. It did not have to do with flavor names and why should it?

Besides, even if there was knowledge by any party of Proccor's registration-and there was not-that is not evidence of bad faith. Knowledge, in the context of a non-trademark, descriptive use -- particularly when there is

5

affirmative evidence of an intent not to confuse, and no direct evidence to the contrary -- is insufficient to raise a genuine issue of material fact as to good faith. *Int'l Stamp Art, Inc. v. United States Postal Serv.,* 456 F.3d at, 2006 U.S. App. LEXIS 17975, *15-16.

Citing the deposition testimony, Plaintiff contends that Charles Weller "did a legal review of Freedom Pop during the product development process. Dkt. No. 182, p. 9 of 26. That is false. Mr. Klein testified that he did not know if "Freedom Pop" received a trademark review. Dkt. No. 182-1, p. 16 of 21; 16-19. He was also quite clear that "Freedom Pop" was used to describe the flavor of the "Nitraflex® product (in which event trademark review was not necessary). *Id.* at 18 of 21; 22-25. While Mr. Post testified that labels received a review for such things as ingredients and claims, he did not say that flavor names received any review.

Plaintiff contends that because TVS' in-house attorney wrote an email to Krigsman in response to his cease-and-desist and mentioned that TVS was not aware there was no licensing agreement, TVS had to know of the need for a licensing agreement.

No license agreement was required here. So, counsel's statement about not knowing one was required, if meant literally, was accurate and completely consistent with the defense.

6

In addition, counsel's statement was not an admission a license was required. It was an off-the-cuff statement made in response to the accusations in the cease-and-desist letter. Counsel was obviously not trying to be contentious, litigious or belligerent. Counsel for TVS was trying to be cooperative and to avoid disputes so she gave Mr. Krigsman the courtesy of the benefit of the doubt.

Respectfully submitted,
Lewis Brisbois Bisgaard & Smith LLP

*/s/ Patrick C. Campbell*
Patrick C. Campbell (*pro hac vice*)
Alexander D. MacMullan (*pro hac vice*)
550 E. Swedesford Road, Suite 270
Wayne, Pennsylvania 19087
Telephone:  (215) 977-4077
Email: patrick.campbell@lewisbrisbois.com
alexander.macmullan@lewisbrisbois.com
*Counsel for Defendants*

DATED: January 2, 2024.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of January 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send an Electronic Mail notification of same to all counsel of record.