UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PROCCOR PHARMACEUTICALS, INC., <br>   Plaintiff, <br> v. <br> WORLD HEALTH PRODUCTS, LLC dba GAT SPORT and VITAMIN SHOPPE INDUSTRIES LLC, dba THE VITAMIN SHOPPE <br>   Defendants. | Case No. 8:22-cv-02227-SDM-SPF |

**PLAINTIFF'S REPLY TO DEFENDANTS' REFILED RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff replies to Defendants' Refiled Response (Dkt. 185) to Plaintiff's Motion for Summary Judgment (Dkt. 167).

### I. FREEDOM POP is an inherently distinctive mark

A mark granted registration by the USPTO without requiring proof of secondary meaning is presumed to be "inherently distinctive." (Dkt. 167, pp. 17-18) The USPTO granted registration of the mark FREEDOM POP without requiring proof of secondary meaning, as shown by the history file (Dkt 168-7), so the FREEDOM POP mark is presumed to be inherently distinctive. Defendants respond that the USPTO history file for FREEDOM POP is inadmissible hearsay and opinion testimony. Both contentions are wrong. The USPTO history file is a "public record" and is admissible under Fed. R. Evid. 803(8). *Pocketbook*

*International SA v. Sitetools, Inc.*, No. CV-20-8708-DMG (PDx), 2022 WL 2189636, at *4, FN 8 (C.D. Cal. Feb. 2, 2022). Moreover, Fed. R. Evid. 702 applies only to proffered opinion testimony of an expert, not to a history file of the USPTO.

To overcome the presumption of inherent distinctiveness Defendants argue that FREEDOM POP "identifies a characteristic or quality of the service or product-such as its flavor" and, therefore, is descriptive. They cite two cases, neither of which supports their argument. In one case, *White v. Tuscano, Inc.*, No. 8:04-cv-2438-T-26 MSS, 2005 WL 8160219 at *3 (M.D. Fla. Oct. 11, 2005) the court held that the mark "Tuscan" was descriptive because it referred to the geographic area known as Tuscany. The Court wrote that geographic names are regarded as common property and not subject to trademark protection absent proof of secondary meaning. *Id*. In the other case, *Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F. 3d 931 (11th Cir. 2010) the court said that the plaintiff's marks, "Slash-It! Sales Event" and "Slasher Sale," were descriptive of plaintiff's service of providing advertising promotions to car dealerships.

The FREEDOM POP mark, in contrast, is not descriptive; it is arbitrary. The words FREEDOM POP used together are not regarded as common property, as in *White*, and do not describe the product with which they are associated – dietary supplements – as in *Caliber Auto*.

2

The words FREEDOM POP, unlike descriptive words such as vanilla and chocolate, do not describe the flavor or taste of anything, as Defendants' own managing employees acknowledge. (Dkt. 167. P. 11; Dkt. 182, p. 3) To get around this irrefutable fact, Defendants argue that the words FREEDOM POP become descriptive to consumers after they have used the product because "consumers who have had" FREEDOM POP "know what to expect" when they purchase the product. (Dkt 185, pp. 7-8). Use of the product or service attached to an arbitrary mark, however, does not make an arbitrary mark descriptive. Otherwise every arbitrary mark attached to a product or service used by consumers would become descriptive. Consumers who use the product know what to expect because of their use of the product, not because the mark describes the product.

Defendants' argument that the words FREEDOM POP are descriptive or generic because they refer to the flavor profile of a Bomb Pop ice pop (Dkt 185, pp. 5-6), also is without merit. First, there is no evidence that the words FREEDOM POP refer to the flavor profile of a Bomb Pop. The evidence is to the contrary. (Dkt. 167, pp. 5 and 11; Dkt 182, pp. 3-4).

Second, there is no evidence that a Bomb Pop has only one flavor profile or that it is recognized. To the contrary, the Wikipedia web site article upon which Defendants' rely to argue that the words "Bomb Pop" refer to a frozen confection flavored with cherry, lime and blue raspberry (Dkt. 164, p. 15 of 39), states that

3

Bomb Pop as of 2015 came in "nine main Bomb Pop flavors" and today include "Original, Fruit Bomb, Watermelon, Hawaiian Punch, Warheads, Jolly Rancher, Original Sugar Free, Banana Fudge, Lemonade, Tongue Splashers and Nerds."[1]

Third, even if "Bomb Pop" was a generic term, which it's not, Plaintiff's mark is FREEDOM POP, which is a different term. In the flavor cases cited by Defendants (Dkt. 185, pp. 5-6) the marks found to be descriptive or generic were identical to generic words used for classes of drinks or foods.

Defendants also have failed to show that Plaintiff's FREEDOM POP mark has been weakened by third party use. All third party use of the mark in the nutritional supplement field came from copycats who used the mark after Plaintiff's adoption of the mark and application to register it with the USPTO. (Dkt. 168-1, ¶¶'s 6-7; Dkt. 170-1, ¶¶'s 6-7). Proccor then policed the use of its mark by infringers by sending cease and desist notices to them. (Dkt. 168-1, ¶¶'s 15-16; Dkt. 182-4, ¶7) All such third party users except GAT and Vitamin Shoppe then agreed to stop using the mark or to license the mark from Proccor. (*Id.*) Licensees were required to identify Proccor as the owner of the FREEDOM POP mark on their websites, and their product and promotional material. (Dkt. 168-1, ¶15)

## II.   There is a likelihood of confusion.

---

[1] Plaintiff does not agree that a Wikipedia web page article is competent, non-hearsay evidence admissible in connection with the parties' motions for summary judgment, but to the extent Defendants are permitted to rely on the Wikipedia Bomb Pop article, the entirety of the article should be considered.

4

Defendants failed to identify any genuine dispute as to the material facts showing a likelihood of confusion. Only a few of their arguments merit discussion. On the issues of similarity of the marks, products, and sales methods, Defendants contend there is "no proof" that Plaintiff sold FREEDOM POP products in late 2021 or 2022. (Dkt 185, pp. 1-12) This is plainly wrong. Ross Krigsman declared under penalty of perjury that Plaintiff sold FREEDOM POP continuously from 2016 through 2023. (Dkt. 168-1, ¶13) Moreover, Defendants possess Plaintiff's sales records showing sales of FREEDOM POP during late 2021-2022. (Dkt. 182-4, ¶6; Decl. Ross Krigsman ¶3, attached as **Exhibit 1**)

Defendants' argument that consumers are not likely to be confused because GAT's products bearing the FREEDOM POP name identify GAT Sports as the seller (Dkt. 185, pp. 12-13) applies the confusion test too narrowly. The test is not limited to confusion as to source but also includes confusion as to "sponsorship, affiliation, or connection." *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F. 3d 1188, 1201-1202 (11th Cir. 2001); *Babbit Electronics, Inc v. Dynascan Corp.*, 38 F. 3d 1161, 1179 (11th Cir. 1994) (confusion test applied as to whether infringer's products are "associated" with the mark's owner and confusion over whether the mark's owner "sponsored, licensed or consented to the manufacture and sale" of the infringer's products).

On the issue of intent, Defendants' glossed over the evidence of their intentional blindness by failing to conduct a trademark search and instead made unsupported allegations that they immediately complied with Plaintiff's cease and desist demand notices. (Dkt. 185, p. 14)  The evidence shows, however, that *after* Defendants received the cease and desist notices they continued selling out their inventory of FREEDOM POP products for at least another eight months. (Dkt. 167, pp. 9-10, 14-17)  Defendants' Response, in fact, admits that they "sold out" their remaining inventory. (Dkt. 185, p. 14) Their contention that Vitamin Shoppe's sales were mere "incidental stocking errors" is not supported by a record citation.

### III. Contributory Infringement and Unfair Competition

Defendants' response to these claims restates arguments previously made. GAT, tellingly, made no effort to explain its inducing emails to Vitamin Shoppe misrepresenting that GAT was negotiating a sell through of existing inventory and encouraging Vitamin Shoppe to continue selling (Dkt. 167, pp. 15-16) or GAT's warranty of non-infringement to Vitamin Shoppe, referenced on page 13 of Defendants' Response. (Dkt.182-8, p.5, GAT warranty of non-infringement)

### IV. The Affirmative Defenses

On the defenses of genericness, descriptiveness, failure to function as a trademark, and fair use, Plaintiff incorporates its response in Dkt. 182, pp. 1-16 to Defendants' arguments incorporated from their Motion found at Dkt. 164.

On the defenses of failure to use the mark in commerce, abandonment, trademark misuse and failure to mark, Defendants simply reargued that FREEDOM POP is not a protectible mark. They failed to present any evidence of failure to use the mark in commerce, abandonment, trademark misuse, or failure to mark.

On the defenses of fraud on the trademark office, unclean hands, and inequitable conduct, Defendants' failed to present any "clear and convincing evidence" as required to support them (Dkt. 167, p. 34) or to rebut Mr. Krigsman's Declaration. (Dkt. 168-1). They argued without evidence that Proccor's specimen of use "falsely indicated" that Proccor sold FREEDOM POP on its website in 2016. Nothing in Proccor's application or specimen, however, says that the specimen is a web page from 2016. It is in fact a web page used in October 2018 when Proccor filed its trademark registration application. (Dkt. 168-1, ¶9) They argue that Proccor did not even sell FREEDOM POP in 2016, ignoring the evidence that it did. (Dkt. 168-1, ¶ 4; Dkt.168-2) And they rely on unidentified records from archive.org to support their argument of no sales, even though archive.org does not purport to archive Proccor's sales at any time. Defendants failed to support these defenses with anything other than speculative arguments. Plaintiff's Motion for Summary Judgment on the affirmative defenses, therefore, should be granted.

> By: /s/ *G. Donovan Conwell, Jr.*
> G. Donovan Conwell, Jr.
> Florida Bar No.: 0371319
> **CONWELL BUSINESS LAW, LLLP**
> 12610 Race Track Road, Suite 200
> Tampa, FL 33626
> Tel. (813) 282-8000, Fax: (813) 855-2631
> dconwell@conwellbusinesslaw.com
> eservice@conwellbusinesslaw.com
> *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of January 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send an Electronic Mail notification of same to all counsel of record.