# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PROCCOR PHARMACEUTICALS, INC.,

    Plaintiff,

v.

WORLD HEALTH PRODUCTS, LLC dba
GAT SPORT and VITAMIN SHOPPE
INDUSTRIES LLC, dba THE VITAMIN
SHOPPE

    Defendants.

Case No. 8:22-cv-02227-SDM-SPF

## AMENDED PRETRIAL STATEMENT

Plaintiff, Proccor Pharmaceuticals, Inc. ("Proccor"), and Defendants

WORLD HEALTH PRODUCTS, LLC dba GAT SPORT ("GAT") and VITAMIN

SHOPPE INDUSTRIES LLC, dba THE VITAMIN SHOPPE ("Vitamin Shoppe")

jointly submit this Amended Pretrial Statement pursuant to Local Rule 3.06(b) and

the Order of this Court [Dkt. 213].

### I.     The basis for the court's jurisdiction.

This Court has subject matter jurisdiction over the federal trademark

infringement and unfair competition claims pursuant to 15 U.S.C. § 1121 and 28

U.S.C. §1338(a) and (b).

### II.     A concise statement of the action.

This is a suit for trademark infringement, contributory trademark

infringement, and unfair competition wherein the Plaintiff, Proccor, seeks monetary

damages, injunctive relief, and other relief from the Defendants based on their alleged infringement of Plaintiff's trademark FREEDOM POP used in connection with Plaintiff's dietary supplements. Defendants have filed a counterclaim seeking cancellation of Plaintiff's trademark for fraud on the PTO, failure to function as a trademark, fair use, lack of descriptiveness, lack of use in commerce and abandonment. Defendants also seek declarations of non-infringement for the same.

### III.   A concise statement of each party's position.

The Plaintiff, Proccor, and the Defendant, GAT, are in the business of developing, manufacturing, and marketing dietary supplements. The Defendant Vitamin Shoppe sells dietary supplements through retail outlets and on-line. Proccor uses the trademark FREEDOM POP in connection with its pre workout powder dietary supplements which it has federally registered with the United States Patent and Trademark Office. After Plaintiff began using the FREEDOM POP mark, GAT began using the words FREEDOM POP on product labeling and in advertising in connection with one of its pre workout powder dietary supplements and Vitamin Shoppe began selling dietary supplements that it purchased from GAT bearing the FREEDOM POP mark.

Proccor claims that both Defendants infringed on its FREEDOM POP trademark and engaged in unfair competition and that GAT contributed to Vitamin

Shoppe's infringement of Proccor's trademark. Plaintiff seeks monetary damages and other relief.

The Defendants deny that they infringed, in large part, because their use of a "Freedom Pop" flavored Nitraflex was not used in a trademark sense and was fair use. Defendants also deny that Proccor has any protectible trademark rights, and maintain that Proccor committed fraud on the PTO in its application for the FREEDOM POP mark. Defendants offered "Freedom Pop" flavored Nitraflex as one of several flavor profiles of its Nitraflex pre-workout supplement. Defendants contend that Plaintiff also offered Freedom Pop flavored Pre-Rx as one of several flavor profiles of its Pre-Rx pre-workout supplement. This is contrary to the use represented in Plaintiff's registration of the mark wherein Plaintiff represented that "Freedom Pop" was the product it sought to trademark rather than a flavor of Pre-Rx. Defendants seek cancellation of Plaintiff's trademark and a declaration of non-infringement.

**IV.   A list of each exhibit with a notation of each objection.**

The parties Exhibit lists are attached as Exhibits 1 and 2.

**V.   A list of each witness by name only with a notation of:**

**(A) The likelihood the witness will testify and**

**(B) Each objection to the witness's testifying.**

Plaintiff's live witnesses:

3

Ross Krigsman. Likely. No objection.

Juan Carlos. Not likely. No objection.

GAT corporate representative. Likely. No objection.

Vitamin Shoppe corporate representative. Likely. No objection.

Neil Smith. Likely. Objection

Neil Beaton. Likely. Objection.


Defendants' Live Witnesses:

Jay Klein. Likely.

Cory Green. Not Likely.

GAT corporate representative. Likely.

Vitamin Shoppe corporate representative. Likely

Tomasso Mastrocola. Not Likely.

Marshall Post. Likely.

Jack Gayton. Not Likely.

Renada Williams. Likely. Objection.

Max Fairchild. Likely.

Scott Ornstein. Likely.

 Tom Matura. Likely.

Ross Krigsman. Likely.

## VI.    A list of each expert witness, with a notation of:

### (A) The substance of the testimony and

**Neil Smith**. The substance of his testimony is as follows. Trademarks are used in many ways. Sometimes for food products, or food services or food, trademarks are used on products, which are listed as "flavors" in the marketing of the products. Such trademarks are not for the flavors, and they are not flavor trademarks. Rather, they are word marks used to identify a particular product. Freedom Pop. In the supplement area, there are many companies using trademark names, which refer to and are listed as flavors, and some of these are even sold by defendant Vitamin Shoppe. Alani Nu  has an energy drink with flavor names of "Cosmic Stardust." (reg. 6237866) Six Star Pre-Workout, a similar purpose product, sells an "Icy Rocket Freeze" flavor through Walmart. (reg. 5124379) Bang sells "Star Blast" energy drinks  (reg. 5938023). Ghost sells a protein powder under the "Cereal Milk" (reg. 6892520) trademark which is the flavor. "Galaxy Lemonade" (reg. 6604901), "Breezeberry" (reg. 6237865) are also used in the field. Gatorade sells Glacier Cherry  (reg. 4401610) and Arctic Blitz (reg. 4952754)  These are registered trademarks and sold with a list of flavors, where, as by the parties here, the lists will include some actual flavor names, like lemon, among the brand named products.

Proccor's trademark application is not for a flavor trademark, which distinguishes and identifies a product by its taste. The words Freedom Pop, unlike the words vanilla or chocolate, do not describe any known taste. If Proccor's registration were for a flavor, it would, like scent registrations, describe the flavor, or taste as the description of the mark in the application and registration, and could be used in a trademark infringement case to prevent others from selling the product or goods <u>with that flavor or taste</u>. That is not the case here where Proccor seeks to prevent the Defendants from using the words FREEDOM POP on the labels and in

the marketing of their nutritional supplements, regardless of the taste of the Defendants product.

The trademark examination in the Trademark Office is rigorous. There are several requirements that the mark must meet and several requirements of filing about the application and specimen of use must meet. All are generally in the Trademark Manual of Examining Procedure, the TMEP. The trademark attorney will reject the trademark if it is generic for the goods for which the mark is sought be registered. MTEP    Section 1209.01(c) says " Generic  terms are terms that the relevant purchasing public understands primarily as the common or class name for the goods or services…. Generic terms are refused registration by the Trademark Office on the Principal Register under Trademark Act §§1, 2, and 45."  Freedom Pop is not a generic term for these supplements branded therewith. It  is arbitrary as applied to  these products. Proccor is selling a prework out nutritional supplement, not freedom pops.

The trademark examining attorney in the USPTO will also assure that the trademark is not  merely descriptive, and if it is merely descriptive may weigh whether the mark has a secondary meaning, which would make it registrable. MTEP Section 1209, entitled " Refusal on Basis of Descriptiveness" says "Matter that 'merely describes' the goods or services on or in connection with which it is used is not registrable on the Principal Register." Applying these criteria, the mark Freedom Pop does not describe the product, or even describe a characteristic of the product, including its flavor. It may be called a flavor in marketing, but it's not being used as a flavor name to describe a taste or flavor, but as a brand name.

The Trademark Office requires the applicant to represent that it is using the trademark sought to be registered in commerce on or in connection with the identified goods and services. Here the identified goods are listed as "International

Class 005: Dietary supplement drinks; Dietary supplements and Dietary and nutritional supplements." The applicant is required to submit at least one specimen, usually as a JPG/PDF image file showing the mark as used in commerce on or in connection with at least one item in the class of listed goods.

Proccor's specimen of use in its trademark application is a screen shot of an internet webpage. There's nothing unusual about an individual principal or employee person within the company, filing his or her own trademark application. For United States applications one does not need to be an attorney and many individuals, such as Mr. Krigsman file their own trademark applications and obtain lawful and valid registrations of trademarks in the United States.

Historically the federal Trademark Office did not initially allow pictures or captures of Internet webpages to be used as specimens, on the basis that they were unreliable as proof of use of trademarks accompanying the sale of goods. The Trademark Office had always allowed point-of-sale displays to be used. These were physical signs or display boards on counters, or near where the products or goods were being sold.

After the Internet was well-established as a place of business commerce, where goods were sold, with developed mechanisms for customers to place orders, based upon the displays of the goods in pictures and/or descriptions, with the trademarks displayed on webpages, the USPTO Office changed its rules and began accepting as proper specimens, copies or captures of Internet webpages where goods were being sold, particularly looking for shopping cart capabilities, where goods could be purchased from the web pages where the trademarks were clearly displayed. The Trademark Office needed to see on the webpage that the goods were being displayed with the trademark, being offered for sale, and that there was a shopping capability for purchase by customers.

7

There is nothing unusual or irregular about the specimen filed by Mr. Krigsman. Mr. Smith reviewed the specimen and records showing Proccor's use of the web pages shown in that specimen in commerce. The specimen shows the use of the trademark as used in commerce in connection with Proccor's products and Mr. Smith would have submitted a similar specimen if he were making the application for Proccor.

If Proccor's trademark application was for a flavor trademark, then the USPTO would have required Proccor to describe the flavor clearly on the application and, if necessary to identify the flavor, to submit a sample of the product so that it could be tasted  by the trademark examiner.

The Manual for Trademark Examining Procedure ("TMEP"), the Bible for the Trademark Office, includes guidelines for specimens. TMEP  Section 904.03(m), entitled " Specimens for Scent and Flavor Marks or Similar Non-traditional Marks" even contemplates how specimens of use must be filed for non-traditional scent and flavor trademarks. It states:

> For an application ... as well as a... statement of use... filing in which a specimen for a scent, flavor, or similar non-traditional mark is being submitted, the applicant must mail the scented or flavored goods to the USPTO. ... A specimen for these types of non-traditional marks may not be submitted electronically. To show that the specimen for a scent or flavor mark actually identifies and distinguishes the goods and indicates their source, an applicant must submit a specimen that contains the actual scent or flavor and that matches the required description of the scent or flavor. In most cases, the specimen will consist of the actual goods themselves because the examining attorney must be able to smell or taste the scent or flavor to determine whether the specimen shows use of the mark in connection with the goods.

TRADEMARK  MANUAL  OF  EXAMINING  PROCEDURE  (TMEP),UNITED

STATES PATENT AND TRADEMARK OFFICE July 2022. The file history shows

that the USPTO did not request from Proccor a sample to taste, and none was sent, showing that this was not a flavor trademark application.

To determine how FREEDOM POP was being used as a trademark and submitting a proper specimen to the Trademark Office, Mr. Smith also would review Proccor's records to determine how Proccor treated FREEDOM POP internally. Proccor's records show that the FREEDOM POP product had and has its own unique product number, showing that Proccor treated FREEDOM POP as a product, and it was being sold in commerce, not just a name added to the website as defendants allege. Mr. Smith's opinion in this regard is also supported by Defendants treatment of GAT's FREEDOM POP product which GAT and Vitamin Shoppe assigned its own unique product number.

Proccor's specimen was proper and appropriate for the goods and the mark, which is clearly a word mark and not for a flavor. The mark Freedom Pop was being used in commerce, both by the use of it on the active live website, and by the actual sales of the goods with the trademark. Most of the challenges to the validity of the trademark, and the specimen of use are based on the arguments that the trademark is for a flavor, and that the mark is used as a flavor, by Proccor or the defendants. The mark is not for a flavor, and as shown, the fact that the parties may call it one in marketing, like so many other food or consumable product companies do, does not give support for defendants' challenges.

The USPTO requires that the specimen submitted with a trademark registration application show the trademark as used in commerce. Proccor's specimen and records show that the web page shown was a live website used in commerce with a sale/shopping capability and that sales were made from the website. It is also apparent from the file history records, and the online records in

the USPTO, where the specimen is shown as a webpage, with a link to a shopping cart and the ability to purchase the products then and there from the website, that this website is a valid and acceptable specimen of use of the mark, at the time.

A website, showing the trademark in proper form, where the goods shown with the trademark can be purchased, is a perfectly appropriate specimen of trademark use, and, here the website specimen was received without objection by the USPTO as showing use of the trademark in commerce in the United States. the USPTO can and does go online to examine websites that are submitted as specimens for trademark applications. The display of the trademark on the active sales website, and the actual sales of the products with the trademark being sold from the website both separately establish actual use of the mark in commerce.

On the specimen website page submitted by Proccor another trademark named PRE-RX appears. This is not unusual as multiple trademarks can be used on the same product, label, or specimen, and each stands alone as proof of use of that trademark.

As part of the examination procedure in the USPTO, the trademark examiner will search a database of registered, and previously or currently applied for, trademarks, as well as, these days, review the Internet broadly as background for the trademark and the goods. If the search of the USPTO database reveals prior registered or active applied for trademarks for the same or similar mark, then the trademark attorney may initially, or finally, reject the trademark on the basis that it is so similar to a prior registered mark that it is likely to cause confusion if used by the applicant for the trademark. The trademark attorney also examines the application and mark to see if it violates any rules or prohibition and meets the criteria for registration of trademarks. Some of those criteria overlap with the challenges made by the defendants to the validity of the FP trademark.

A company or party, selecting or adopting a trademark to use, will since the Internet has been popular, do at least an informal search on the Internet, using Google or another search engine to see if the mark is being used by others in similar business or selling or making similar products, and often will also search the records of trademark registrations and applications in the USPTO, the same data used by the trademark examiner, or similar freely-available free database searches on the Internet. The USPTO database and other good data of registered trademarks are easy to find using these search engines.

Further, an applicant for a trademark, or the individuals in a company seeking to use or register a trademark, may also do a search of trademark office registrations and applications in the federal Trademark Office, before filing to register a trademark there. These search sources are available online and easily done. It is not required, but generally prudent parties wishing to choose and use a trademark will make such use of the USPTO trademark data.

Many of the sources of availability and prior use, or the search for identical or similar marks, can be done through various search engines, without cost, such as using the Google search engine. This is a prudent and appropriate action to be taken ahead of using or registering a trademark.

Mr. Krigsman's practice of conducting such a search before he adopted the Freedom Pop mark and filed to register it, was a prudent action. Proccor's USPTO file history records show that the USPTO made its own search of the USPTO's database of registered and pending marks and did not find a conflicting mark that would bar registration of Freedom Pop under the Trademark Act. (Proccor 000048) This trademark clearance is an important part of applying to register a trademark as it indicates no other party has applied to register the same trademark or a confusingly similar mark.

11

Proccor's USPTO file history records also show that the Proccor trademark Freedom Pop was published by the USPTO in the Trademark Official Gazette on February 19, 2019. This is done to give third parties who believe they will be damaged by a registration of the mark the opportunity to oppose the registration of the mark. The file history and the Trademark Office records shows that no one opposed the registration of Proccor's trademark, Freedom Pop. (Proccor 000034)

When all the requirements of the trademark registration application have been met the USPTO will grant the application and issue a trademark registration certificate. The USPTO issued a Certificate of Registration to Proccor for its trademark Freedom Pop on May 7, 2019. The USPTO will not grant the application and issue a registration certificate for registration on the Principal Register if the mark is generic. Nor will it do so if the mark is descriptive unless secondary meaning has been shown. But if the trademark identified has acquired a secondary meaning, where the principal and overriding meaning of the term to the public is identified with the particular manufacturer of the product, or as a brand-name for the product, by the public, then one might be able to obtain a registration based on that "secondary meaning" which is the name the law gives to that, really principal, meaning, that the public recognizes in the mark. Proccor was not asked by the USPTO to submit, and  Proccor did not submit any evidence of secondary meaning to support its application to register the Freedom Pop trademark. If the USPTO considered Freedom Pop as used by Proccor to be descriptive it would have required evidence of secondary meaning. The USPTO's issuance of a registration certificate to Proccor for Freedom Pop on the Principal Register indicates that the USPTO did not consider Proccor's Freedom Pop mark to be generic or descriptive.

The Certificate also  shows that Freedom Pop was registered on the Principal Register. This puts the world on constructive notice of Proccor's claim to ownership

of the mark, shows a date of constructive use of the mark as of the date of filing the application and creates a presumption of Proccor's ownership of the Freedom Pop mark and Proccor's exclusive right to use the Freedom Pop trademark in commerce in connection with the class of goods in which the mark was registered. MPE 801.02(a)

**Neil Beaton.** The substance of his testimony is as follows. GAT's sales of alleged infringing product is $596,366. Vitamin Shoppe's sales of alleged infringing product is $571,385. It is reasonable to measure Plaintiff's damages as the royalties Proccor would have received for the Defendants use of the FREEDOM POP trademark. A reasonable royalty on GAT's sales of alleged infringing product at $25 per unit is $611,350. A reasonable royalty on Vitamin Shoppe's sales of alleged infringing product at $25 per unit is $454,600. Plaintiff is still awaiting GAT's production of its current financial worth documents. When they are produced Mr. Beaton will be asked to review them to explain them, as necessary.

### (B) Each objection to the witness's testifying

Defendants object to both witnesses testifying. Defendants have filed motions to that effect. E.g., ECF Nos. 165 and 166.

Mr. Smith should not be permitted to testify because, among other things, 1) his opinions about the trademark process is not helpful and it is speculative 2) his opinion about whether Plaintiff's use of the phrase "Freedom Pop" in a trademark sense x) is a legal conclusion y) ignores the undisputed record, namely that it was used i) in a "flavor" drop down box on Proccor's website ii) it appeared in Proccor's marketing material described as a "bomb pop" inspired "flavor" surrounded by red, white and blue ice pops iii) it appeared on Proccor's label surrounded by the red, white and blue ice pop for a product whose flavor profile

matched the "bomb pop" and z) how Proccor intended to use the phrase "Freedom Pop" is state of mind or intent evidence.

Mr. Beaton should not be permitted to testify because, among other things, Plaintiff has not sustained any actual damages 2) he double counts sales 3) he relies on nuisance value up front prelitigation settlements to arrive at a continuing hypothetical royalty rate equal to the selling price of the products and 4) he cherry picks facts, and 5) he fails to apply the *Georgia Pacific* factors to his hypothetical license agreement.

### VII.   A breakdown of the type and amount of monetary damages.

Plaintiff seeks a royalty on GAT's sales of alleged infringing product at $25 per unit in the amount of $611,350. and a royalty on Vitamin Shoppe's sales of alleged infringing product at $25 per unit in the amount of $454,600.

Plaintiff also seeks a disgorgement of Defendants profits. GAT's sales of product bearing the infringing mark is in the amount of at least $596,366. Vitamin Shoppe's sales of product bearing the infringing mark is in the amount of at least $571,385.

Plaintiff also seeks punitive damages but cannot identify an amount because it does not yet have Defendants current financial worth documents and the jury determines the amount.

Plaintiff seeks additional relief based on Defendants' willful infringement such as trebling of damages, and attorneys' fees.

Defendants contest Plaintiff's method and calculation of damages for the reasons set out in their Motion to Preclude Neil Beaton, Motions *in Limine*, their Motion for Summary Judgment and their Opposition to Plaintiff's Motion for Summary Judgment. Defendants also contest Plaintiff's claim for punitive damages and attorney's fees for the reasons set out in their Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. Defendants have numerous reasons why they contest Plaintiff's damage claim but understand this is not the place to make those arguments and are not waiving any argument by not stating it here.

Defendants will seek attorney's fees any costs.

**VIII.  a list of each deposition offered in lieu of live testimony unless the deposition is only for impeachment.**

Jay Klein.

Cory Green.

Tomasa Mastrocola.

Marshall Post.

Max Fairchild.

Scott Ornstein.

Max Fairchild.

Thomas Matura, individually and as corporate representative.

Jack Gayton.

The above are Plaintiff's designations.. The page and lines designations, counter designations and the objections to the designations are attached as Exhibit 3.

### IX.   A concise statement of each admitted fact.

1.  Proccor is a Florida corporation with its principal place of business in Hillsborough County, Florida. Proccor is in the business of developing, manufacturing, and marketing dietary supplements.

2.  GAT is a Connecticut limited liability company. GAT sells dietary supplements on-line throughout the United States, including the State of Florida and through retailers, including the Defendant Vitamin Shoppe.

3.  Vitamin Shoppe is a New York limited liability company. Vitamin Shoppe is registered to do business in the State of Florida with the Florida Secretary of State. Vitamin Shoppe sells dietary products through retail outlets and on-line.

4.  Proccor has sold a dietary product known as a pre workout powder throughout the United States including Hillsborough County, Florida bearing the name "FREEDOM POP" on product labeling. The USPTO, as part of its evaluation of Proccor's application, conducted a search of its database of

registered and pending marks and found no conflicting marks that would prevent registration of the FREEDOM POP mark.

5.  Proccor obtained a federal registration for "FREEDOM POP" which it has maintained on the principal trademark register since May 7, 2019.

6.  Proccor owns the trademark in the United States to "FREEDOM POP" U.S. Reg. No. 5745558. The mark is a standard character mark.

7.  Beginning in September of 2020 GAT began sale of a flavor called Freedom Pop of its Nitraflex pre-workout product, including to Vitamin Shoppe.

8.  Proccor wrote to GAT on September 7, 2021, and demanded that it cease and desist its use of "FREEDOM POP." The notice explained that Proccor had registered its FREEDOM POP trademark with the USPTO and demanded that GAT cease and desist its use of the mark by September 21, 2021.

9.  GAT replied by letter from its outside counsel, Charles Weller, declining to discontinue its use of the words FREEDOM POP.

10.Proccor wrote to Vitamin Shoppe on December 20, 2021, and demanded that it cease and desist use of Proccor's registered mark, "FREEDOM POP." Proccor gave Vitamin Shoppe two weeks to comply. Vitamin Shoppe responded on January 12, 2022.

11.Proccor and GAT both advertise on Google, Amazon, Instagram, and Facebook to the fitness community.

12. Proccor has offered for sale  FREEDOM POP on line on the Proccor website, through Amazon and Shopify.

13. Proccor has entered into agreements that were labeled trademark and license agreements with three supplement companies.

## X.    A concise statement of each agreed principle of law.

1. To prevail on a claim for trademark infringement, a plaintiff must show: (1) that its mark is entitled to protection, and (2) that the defendant used a mark that was either identical with the plaintiff's mark, or so similar that it was likely to confuse consumers as to source, sponsorship, affiliation, or connection.

2. Registration of a mark establishes a rebuttable presumption at least of the validity and ownership of the mark as well as the right to use the mark.

3. Likelihood of confusion occurs when a later user uses a trademark in a manner which is likely to cause confusion among ordinarily prudent purchasers or prospective purchasers as to the source of the product or the sponsorship, affiliation, or connection of the product with the trademark owner.

4. Likelihood of confusion is assessed by examining seven factors: (1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods offered

under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) existence and extent of actual confusion in the consuming public.

5. The type of the mark determines whether the mark is strong or weak. The strength of the mark is one of the two most probative factors in determining whether there is a likelihood of confusion from an allegedly infringing mark. The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives.

6. There are four categories of marks: 1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. Arbitrary marks are the strongest of the four categories. An arbitrary mark is a word or phrase that bears no logical relationship to the product. A generic name refers to a particular genus or class of which an individual article or service is but a member. By another measure, a generic name is the term by which the product or service itself is commonly known. By another a generic name depicts the product or service as a whole, rather than any particular feature, quality, or characteristic of the whole.

7. The similarity of sales methods such as sales outlets and customer bases takes into consideration where, how, and to whom the parties' products are sold. Direct competition between the parties is not required for this factor to weigh in favor of a likelihood of confusion, though evidence that the products are sold in the same stores is certainly strong. The parties' outlets and customer bases need not be identical, but some degree of overlap should be present.

8. The similarity of advertising factor looks to each party's method of advertising. The standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result.

9. The intent factor can be satisfied with evidence that the alleged infringer acted with intentional blindness.

10. To prevail on a Florida common law unfair competition claim, a plaintiff must prove that (1) the plaintiff is the prior user of the trade name or service mark, (2) the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning, (3) the defendant is using a confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already established its trade name or service

mark, and (4) as a result of the defendant's action or threatened action, consumer confusion as to the source or sponsorship of the defendant's goods or services is likely.

11. Actual damage to a trademark owner arising from an infringement is the deprivation  of the economic benefits they normally would have received by licensing the use of their marks in connection with the sale of the infringing product defendant misappropriated a valuable right belonging to plaintiffs and did not pay for it.

12. Uncertainty in the amount of a reasonable royalty does not bar recovery of reasonable royalty damages. A Plaintiff may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation.

13. If Plaintiff establishes trademark infringement Plaintiff may be entitled, subject to the provisions of sections 1111 and 1114 of title 15, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, (3) the costs of the action and (4) in an exceptional case, Plaintiff's attorneys fees. To be an "exceptional case" under the Lanham Act requires that a case "stands out from others," either based on the strength of the litigating positions or the manner in which the case was litigated.

14. To establish fair-use, Defendants must prove that their use was (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.

15. To establish their abandonment defense Defendants must prove non-use of the mark by Plaintiff and Plaintiff's intent not to resume use of the mark.

16. To establish their unclean hands defense Defendants must prove wrongdoing by the Plaintiff that was directly related to the Plaintiff's trademark infringement claim and that the Defendants were personally injured by the Plaintiff's conduct.

17. To succeed on a fraud ground for cancellation, GAT must prove by clear and convincing evidence that: 1) Proccor knowingly made a false representation of fact to the U.S. Patent and Trademark Office; 2) The false representation was made with an intent to deceive; and 3 The false representation was material in the sense that the U.S. Patent and Trademark Office would not have issued or maintained Proccor's registration in the absence of the false representation. Any doubt must be resolved against GAT. Defendants disagree on the last sentence.

## XI.   A concise statement of each issue of fact.

1. Whether the USPTO, as part of its evaluation of Proccor's application, conducted a search of its database of registered and pending marks and

found no conflicting marks that would prevent registration of the FREEDOM POP mark.

2. Whether the likelihood of confusion is greater when an infringer uses the exact trademark.

3. Whether the Defendants used a mark[1] that was either identical with the plaintiff's mark, or so similar that it was likely to confuse consumers as to source, sponsorship, affiliation, or connection. Defendants contend that this should be listed as an issue of law.

4. Whether the FREEDOM POP mark  is arbitrary, suggestive, descriptive or generic.

5. Whether FREEDOM POP is used by Proccor to describe a flavor or particular taste.

6. Whether Freedom Pop describes a red, white and blue popsicle with flavors of cherry, lemon lime and blue raspberry?

7. Whether Proccor added the registration symbol "®" after the words FREEDOM POP on the labeling of its newly manufactured FREEDOM POP pre workout powders

---

[1] Defendants contend they did not use the phrase "Freedom Pop" as a "mark" but, rather, as a flavor descriptor.

8. Whether after Proccor began using the mark, FREEDOM POP, in commerce, GAT adopted and began using the mark "FREEDOM POP" on product labeling affixed to pre workout powder products sold by GAT throughout the United States, including the State of Florida, and in GAT advertising of its pre workout products. Defendants believe this is an issue of law.

9. Whether GAT's sales of pre workout dietary supplements bearing the mark "FREEDOM POP" began on September 2, 2020 and continued through at least June 17, 2022.

10. Whether GAT continued selling product bearing the words FREEDOM POP through at least June 2022.

11. Whether after Proccor began its use of the mark FREEDOM POP, in commerce, Vitamin Shoppe began using the mark "FREEDOM POP" by offering for sale and selling on the Vitamin Shoppe web site and in Vitamin Shoppe stores throughout the United States, including the State of Florida, pre workout powder manufactured by GAT that bear Proccor's trademark, FREEDOM POP, on the labeling.

12. Whether Vitamin Shoppe replied to Proccor's cease and desist demand that it began selling dietary products that it obtained from GAT bearing the FREEDOM POP mark on September 22, 2020, and that it had sold 16,099 units of the products, (with 19,800 units received).

13. Whether Vitamin Shoppe continued to advertise, offer for sale, and sell GAT products bearing the FREEDOM POP mark through August 28, 2022.

14. Whether the FREEDOM POP marks used by Proccor and by the Defendants are similar.

15. Whether the goods offered under Proccor's FREEDOM POP mark and the Defendants use of that mark – pre workout powders - are similar.

16. Whether the sales outlets for Proccor's pre workout powder with the FREEDOM POP mark and the Defendants pre workout powder that uses the FREEDOM POP mark are similar.

17. Whether the customer base for Proccor's pre workout powder with the FREEDOM POP mark and the Defendants pre workout powder is similar.

18. Whether Proccor has discontinued its use of the FREEDOM POP mark.

19. Whether GAT sold its FREEDOM POP labeled pre workout powder on line on the GAT website, through Amazon and through brick and mortar retail outlets.

20. Whether Vitamin Shoppe sold GAT's FREEDOM POP labeled pre workout powder on line on the Vitamin Shoppe website, through Amazon and through its own brick and mortar retail outlets.

21. Whether Proccor licensed the use of its FREEDOM POP trademark to Bodybuilding.com, which has one of the largest supplement websites in the

world with millions of visitors daily and whether Proccor's licensees' websites and the Bodybuilding.com website state where the FREEDOM POP name is used that "FREEDOM POP is a registered trademark of Proccor Pharmaceuticals, Inc., and used under license."

22. Whether GAT's sales of pre workout powder bearing the phrase FREEDOM POP were in the amount of at least $596,366 and Vitamin Shoppe's sales of pre workout powder bearing the phrase FREEDOM POP were in the amount of at least $571,385.

23. Whether at least seven other competitors used "Freedom Pop" as a flavor of pre-workout, many with the stock image of the ice pop.

24. Whether Proccor sent cease and desist demands to competitors that used the Freedom Pop mark and whether the competitors complied with the demands.

25. Whether Proccor offered Freedom Pop flavored Pre-Rx as one of several available flavors of pre-workout.

26. Whether Mr. Krigsman sent emails to customers on at least a handful of occasions, expressly characterizing "Freedom Pop" as one of many available "flavors."

27. Whether Plaintiff has been damaged by Defendants and if so, in what amount.

28. If it is found that Vitamin Shoppe infringed upon a valid trademark, whether GAT (a) intentionally induced Vitamin Shoppe to commit that infringement, (b) supplied a product to Vitamin Shoppe whom it knew was directly infringing (actual knowledge), or (c) supplied a product to the Vitamin Shoppe whom it had reason to know was directly infringing (constructive knowledge).

29. Whether Defendants used a confusingly similar trademark to indicate or identify similar goods marketed by them in competition with plaintiff in the same trade area in which plaintiff had already established its trademark, and as a result of the Defendants' action or threatened action, consumer confusion as to the source or sponsorship of the Defendants' goods is likely.

30. If Defendants are found to have infringed, then whether Defendants' infringement was willful.

31. The amount of Defendant's profits from the sale of product bearing the words Freedom Pop.

32. If the jury finds a Defendant liable for unfair competition, then the amount of punitive damages, if any, to award against such Defendant.

33. Whether the facts of this case justify an enhanced award Defendants contend that this is an issue of law.

34. Whether the specimen submitted in conjunction with Plaintiff's trademark application for "Freedom Pop" was an accurate depiction of Proccor's use of the mark in commerce.

35. Whether Proccor knowingly made false, material representations of fact in connection with an application for a registered mark and with the purpose or intent to deceive the PTO in the application of the mark.

36. Whether Proccor stopped using the mark FREEDOM POP and, if so, intends not to resume use of the mark, thereby abandoning the mark.

37. Whether Proccor engaged in wrongdoing directly related to its trademark infringement claim and the Defendants were personally injured by such misconduct.

38. Whether Proccor failed to use the FREEDOM POP mark in commerce. Defendants contend this issue should be stated as whether Proccor regularly sold Freedom Pop Flavored Pre-Rx.

39. Whether FREEDOM POP failed to function as a trademark. Defendants contend that this is an issue of law.

40. Whether each Defendant used FREEDOM POP other than as a mark, in a descriptive sense and in good faith.

41. Whether there were any phrases other than the phrase FREEDOM POP available to the Defendants to use as a name for a flavor for GAT's pre-

workout powder. Defendants contend that this is not relevant to the fair use defense asserted here.

42. The amount, if any, and dates of sale of Plaintiff's Pre-Rx pre-workout powder affixed with a FREEDOM POP mark that were sold by Proccor. Plaintiff contends that this is not an issue in this case.

43. Whether the specimen submitted in conjunction with Plaintiff's trademark application for "FREEDOM POP" which contained a banner page advertising "Pre-Rx Freedom Pop" was an accurate depiction of its website.

44. Whether Defendants sold "Nitraflex +" products bearing the words FREEDOM POP and if so, the number of units sold and sales revenue generated from those sales.

## XII.   A concise statement of each issue of law.

1. Whether Defendants' sale of a pre-workout powder with the flavor name Freedom Pop constituted infringement upon Plaintiff's trademark of Freedom Pop. Plaintiff contends that this should be listed as an issue of fact unless the Court finds that there are no disputed issues of material fact on this issue.

2. Whether Defendants' sale of cherry, lemon lime and blue raspberry flavored Nitraflex with the flavor name Freedom Pop constituted

infringement upon Plaintiff's trademark of Freedom Pop. Plaintiff disagrees with the phrasing of this issue.

3. Whether Plaintiff's FREEDOM POP mark is arbitrary, suggestive, descriptive or generic.

4. Whether Defendants' sale of a pre-workout powder with the flavor name Freedom Pop constituted fair use of the term Freedom Pop. Plaintiff contends that this should be listed as an issue of fact unless the Court finds that there are no disputed issues of material fact on this issue.

5. Whether Defendants' sale of cherry, lemon lime and blue raspberry flavored Nitraflex with the flavor name Freedom Pop constituted fair use of the term Freedom Pop. Plaintiff disagrees with the phrasing of this issue.

6. Whether royalty-based damages are a recoverable form of damages in this case.

7. Whether the elements of a claim for contributory trademark infringement are  (1) a person or entity commits direct trademark infringement under the Lanham Act; and (2) the defendant (a) "intentionally induces" the direct infringer to commit infringement, (b) supplies a "product" to the direct infringer whom it "knows" is directly infringing (actual

knowledge), or (c) supplies a "product" to the direct infringer whom it "has reason to know" is directly infringing (constructive knowledge).

8. Whether Defendants used the term "Freedom Pop" in describing a flavor of Nitraflex in a trademark sense. Plaintiff disagrees with the phrasing of this issue.

9. Whether the fair-use defense forbids a trademark registrant from appropriating words that describe goods or services simply because they are part of a trademark.

10. Whether Classic (as opposed to nominative) fair use is where defendant utilizes words, that may be in a plaintiff's mark, not to identify with plaintiff's product, but merely to describe its own.

11. Whether a putative infringer that clearly indicates the actual source of its products, uses an allegedly infringing phrase in a non-trademark sense.

12. Whether trademark protection is only available to "distinctive" marks.

13. Whether a generic term cannot be appropriated from the public domain and thus cannot receive trademark protection.

14. Whether a term is generic if the primary significance of the mark explains what the product is, as opposed to who produced it.

15. Whether a descriptive mark identifies a characteristic or quality of the service or product-such as its flavor.

16. Whether proof of secondary meaning in a trademark requires a showing that the mark has become distinctive of the trademark holder's product.

17. Whether evidence of actual confusion is hard to uncover and is not necessary to finding a likelihood of confusion.

18. Whether royalty-based damages are a recoverable form of damages in this case.

19. Whether a reasonable royalty recognizes that, separate from the more traditional damages such as lost sales or declining reputation, trademark infringement deprives the mark's owner of the economic benefit of controlling and licensing the right to use the mark.

20. Whether the defense of fraud on the trademark office carries a heavy burden of proof.

21. Whether the defense of fraud on the trademark office requires Defendants to show by clear and convincing evidence, that Proccor knowingly made a false, material representations of fact in connection with or made a material misrepresentation of fact in its application for a

registered mark and with the purpose or intent to deceive the PTO in the application of the mark.

22. Whether Plaintiff is entitled to permanent injunctive relief against the Defendants use of the FREEDOM POP mark.

23. Whether in this case, punitive damages are available under Florida state and common laws for non-Lanham Act violations in the same action.

24. Whether Plaintiff is entitled to an award of any sum exceeding the amount of its actual damages as provided in 15 USC § 1117(a).

25. Whether Plaintiff is entitled to an award of its reasonable attorneys' fees.

26. Whether Defendants affirmative defenses of inequitable conduct, and estoppel state legally cognizable defenses to Plaintiff's claims.

27. Whether GAT is entitled to a judgment cancelling Plaintiff's registration of the FREEDOM POP trademark.

28. Whether GAT is entitled to a declaratory judgment declaring that Plaintiff's registration of the FREEDOM POP trademark is invalid and unenforceable.

29. Whether GAT is entitled to a declaratory judgment declaring that GAT has not infringed Plaintiff's FREEDOM POP trademark.

30. Whether this case is exceptional and whether GAT or Vitamin Shoppe is entitled to an award of its reasonable attorneys' fees.

**XIII.  A list of each pending motion and unresolved issue.**

1.  Defendants' Motion to Preclude the Testimony of Neil Smith.

2.  Defendants' Motion to Preclude the Testimony of Neil Beaton.

3.  Defendants' Motion for Summary Judgment

4.  Plaintiff's Motion for Summary Judgment

5.  Defendants' Motion in Limine to Preclude Information and Documents Relating to the Report and Testimony of Neil J. Beaton

6.  Defendants' Motion in Limine Regarding Speculative and Unstated Opinions Allegedly Made by an Examiner at the USPTO

7.  Proccor contends that GAT has not yet complied with this Court's order that it produce its "current" financial worth documents because GAT does not have completed and filed 2023 financial statements. GAT has provided its 2022 financial statements and a 2023 draft balance sheet.. [Dkt. 159] Plaintiff has withheld filing a motion for contempt and sanctions while trying to resolve this issue with counsel for Defendants.

8.  Defendants have not disclosed any expert witnesses or produced any expert reports. Plaintiff is concerned that Defendants may attempt to introduce expert testimony and evidence through lay witness testimony and at this time is alerting the Court to this potential issue.

9.  During the depositions of Mr. Beaton and Mr. Smith, and in accordance with FRCP 26 (b)(4)(E), Defendants' counsel agreed to pay the fees of those experts in appearing for their depositions. The depositions were taken in October 2023 and the experts invoiced Defendants' counsel for the deposition time soon thereafter.  Defendants have not paid the invoices which are substantially past due. Plaintiff's counsel is preparing a motion to require the Defendants to comply with their agreement to pay the experts and to comply with Rule 26 (b)(4)(E). Defendants disagree with this characterization and have requested itemized bills from the witnesses in order to resolve this.

**XIV.  A statement of the usefulness of further settlement discussions.**

The parties do not believe that further settlement discussions would be useful at this time.

**XV.   CERTIFICATION: In preparing this final pretrial statement I have aimed for the just, speedy, and inexpensive resolution of this case.**

By:     /s/ *G. Donovan Conwell, Jr.*
        G. Donovan Conwell, Jr.
        Florida Bar No.: 0371319
        **CONWELL BUSINESS LAW, LLLP**
        12610 Race Track Road, Suite 200
        Tampa, FL 33626
        Tel. (813) 282-8000, Fax: (813) 855-2631
        dconwell@conwellbusinesslaw.com

eservice@conwellbusinesslaw.com
*Counsel for Plaintiff*


LEWIS BRISBOIS BISGAARD & SMITH LLP

*/s/ Patrick C. Campbell*
Patrick C. Campbell (*pro hac vice*)
Alexander D. MacMullan (*pro hac vice*)
550 E. Swedesford Road, Suite 270
Wayne, Pennsylvania 19087
Telephone:  (215) 977-4077
Email: patrick.campbell@lewisbrisbois.com
alexander.macmullan@lewisbrisbois.com
*Counsel for Defendants*