UNITED STATES DISTRICT
COURT MIDDLE DISTRICT
OF FLORIDA TAMPA
DIVISION

PROCCOR PHARMACEUTICALS, INC.,

   Plaintiff,

v().

WORLD HEALTH PRODUCTS, LLC dba GAT SPORT and VITAMIN SHOPPE INDUSTRIES LLC, dba THE VITAMIN SHOPPE

   Defendants.

Case No. 8:22-cv-02227-SDM-SPF

**DEFENDANT WORLD HEALTH PRODUCTS, LLC d/b/a GAT SPORT RESPONSE TO THE COURT'S SHOW CAUSE" WHY THIS ACTION SHOULD NOT PROCEED TO TRIAL (DKT. NO. 262)**

### I.   INTRODUCTION

Defendant, World Health Products, LLC d/b/a GAT SPORT ("GAT") respectfully submits this response to the Court's Show Cause Order (Dkt. No. 262). For the reasons set forth below, this case should not be listed for trial because, as long as direct and indirect claims against Defendant The Vitamin Shoppe Industries, LLC ("TVS") remain as part of this case.

1

## II.     BACKGROUND

### A. <u>The Claims Against TVS in this Case</u>

There are 2 direct claims against TVS in the Second Amended Complaint (Dkt No. 92)-Counts III (Trademark Infringement) and IV (Unfair Competition). There is also an indirect claim against TVS in Count V for Contributory Trademark Infringement.

### B. <u>The Bankruptcy Confirmation Plan</u>

TVS filed a petition for bankruptcy, in the case captioned *In re Franchise Group, Inc. et al*, Bkrtcy. Dist. Del. No. 24-12840, on November 4, 2024. Dkt. No. 259.

On June 5, 2025, the bankruptcy court entered Findings of Fact, Conclusions of Law, and Order I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group Inc. and Its Debtor Affiliates and II) Approving the Global Settlement and Release of Claims and Causes of Action by and among The Global Settlement Parties (the "Confirmation Order")(Dkt. No. 1596).  A copy of the Confirmation Order is attached as Exhibit 1. Among other things, the Confirmation order contains a discharge and, more importantly here, a permanent injunction which provides (emphasis added) (bold in original):

> Except as otherwise provided herein or for obligations issued pursuant hereto, all Persons or Entities that have held, hold, or may hold Claims or Equity Interests that have been released, discharged, or are subject to Exculpation pursuant to <u>Section 12.4</u>, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) <u>*commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims*</u> or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties or the property or Estates of the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Equity Interests unless such setoff was formally asserted in a timely Filed Proof of Claim or such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; <u>*and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released*</u>, exculpated or settled pursuant to the Plan.

The Confirmation Order ¶¶ 12.6-12.6.

The term "Claim" is defined as "any claim as defined in section 101(5) of the Bankruptcy Code against any Debtor…" The Confirmation Order ¶ 1.34. Section 101(5) provides that a "claim" include:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

It should also be noted that Proccor attempted to get leave from the automatic stay by consent of the debtor's counsel, and an assignment of the indemnity rights. That attempt was obviously rejected. We also understand Proccor did not submit a proof of claim, did not challenge the discharge or the injunction, and has not sought leave from the Bankruptcy Court to pursue these claims.

### C. Proccor's "Notice of Status" in this Case

On June 27, 2025, Proccor filed a "Notice of Status of The Vitamin Shoppe Bankruptcy Proceedings" ("Proccor's Notice of Status")(Dkt. No.

4

261). In ¶¶ 7 and 8 of Proccor's Notice of Status, filing, Proccor states (emphasis added):

> Under 11 U.S.C. § 362(c), in a chapter 11 case the automatic stay continues with respect to property until the property is no longer property of the estate, and with respect to any other act until a discharge is granted. Because a discharge was granted in the Vitamin Shoppe plan and confirmation order, the automatic stay is no longer in effect. Because Proccor does not seek to exercise control over property, and because any property at issue here has either been sold as part of the sale or revested, there is no property of the estate over which Proccor seeks to exercise control. *The automatic stay, therefore, does not apply to the remaining claims and causes of action, and this case should proceed to trial*.
>
> Additionally, this case can proceed notwithstanding the confirmation of Vitamin Shoppe's plan because Proccor does not seek any recovery against Vitamin Shoppe's bankruptcy estate. Rather, Proccor only seeks to prosecute the Florida District Court Action to liquidate its claim and recover upon any judgment resulting from the Florida District Court Action solely from GAT, *either directly or for which GAT is responsible as indemnitor*, for damages awarded in the Florida District Court Action in favor of Proccor.

### III. ANALYSIS

#### A. Proccor's Notice of Status Is an Attempt to Continue This Case Against TVS and Clearly Violates the Permanent Injunction.

There is no question that the injunction applies to this case nor has Proccor suggested it does not. Proccor's Notice of Status is an attempt to sidestep the bankruptcy court and the injunction.

5

Moreover, it is wrong on several levels. Contrary to what Proccor states, section 1141(d)(3)(A) of the Bankruptcy Code provides (emphasis added):

> The *confirmation of a plan does <u>not</u> discharge a debtor if*—(A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan . . .

11 U.S.C. § 1141(d) (3)(A). As Proccor admits TVS's assets have been sold (Dkt. No. 261, ¶ 6), there is a question as to whether TVS plans to "engage in business after consummation of the plan". Proccor ignores that.

Assuming a discharge, (see, Confirmation Order ¶ 12.5), it is binding on Proccor. E.g., *Matter of Depew*, 115 B.R. 965, 966 (Bankr. N.D. Ind. 1989)(relying on, *inter alia*, Bankruptcy Code § 1141(a)[1])("Since confirmation binds both debtors and creditors to the terms of a confirmed plan, it

---

[1] Section 1141(a) provides:

> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

effectively replaces debtors' pre-petition obligations to creditors, which were discharged, with the obligations to those creditors set forth in the confirmed plan".) It not only releases or voids any past or future judgments on the discharged debt; it also operates as an injunction prohibiting creditors from attempting to collect or to recover the debt. *In re Daly*, 666 B.R. 810, 820 (Bankr. S.D. Fla. 2025)(quoting *Harrington v. Purdue Pharma L. P.* 603 U.S. 204, 214-15 (2024)).

Proccor ignores that, pursuant to the express terms of the Plan, a permanent injunction now applies enjoining all persons, including Proccor, from ***continuing any proceeding regarding claims*** against TVS.

### B. Proccor has no Indemnification Rights Against GAT

In ¶ 8 of its Notice of Status, Proccor suggests that if this case proceeds, Proccor will limit its recovery against GAT as indemnitor. This argument is wrong and does not create an excuse to violate the injunction for at least 3 reasons.

First, the injunction makes no distinction as to who Proccor intends to collect against. If the proceeding involves a Claim, which in this case it does, it is enjoined as against the debtor-here TVS. In fact, in order for the indemnification obligation to be triggered, Proccor needs a judgment against

7

TVS. That obviously violates the injunction. Proccor needs relief from the injunction (which it has never sought) to proceed in any manner on the claims against TVS.

Second, Proccor acknowledges TVS' assets were sold and states in its Notice of Status, ¶ 6, that the indemnity agreement was assigned to the purchaser as part of the asset sale. That extinguishes any indemnification obligation GAT had to TVS-the assignor-or at least puts those rights and obligations in the hands of the purchaser.

Furthermore, the assets of the debtor-TVS, of which indemnifications rights would be one, if not sold, belong to the estate of the debtor. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 373 (2019)("The filing of a petition creates a bankruptcy estate consisting of all the debtor's assets and rights.") Proccor cannot dictate that it has assumed the debtor's contract rights.

Lastly, Proccor baldly insinuates that it has some sort of direct rights against GAT because of an indemnification obligation between GAT and TVS. Dkt. No. 261, ¶ 8. Proccor does not address the actual agreement. To be clear, Proccor has no rights under any contract between GAT and TVS. Proccor has not been assigned the agreement. Proccor is not identified in the

8

agreement. Proccor's alleged trademark is not mentioned in the agreement. The products at issue in this case are not mentioned in the agreement. And, most importantly, the agreement only provides for indemnification rights *to* TVS and its customers-not to any third parties, like Proccor, who bring claims against TVS.² See, generally, *Walter Taft Bradshaw & Assocs., P.A. v.*

---

² The Indemnification provision is paragraph 4 in a May 22, 2012, Purchase Agreement between TVS and GAT. It provides:

> Indemnification. Vendor shall indemnify, defend and hold harmless VS, its affiliates and customers, and their respective officers, directors, agents and employees, from and against any and all claims, liabilities, losses, damages and expenses (including attorneys' fees and costs, increased and/or punitive awards) which result in whole or in part from (i) any actual or alleged defect in any Merchandise (latent or patent), (ii) the promotion, sale, use or purchase of any Merchandise by VS and/or its direct or indirect customers, and/or (iii) the failure of the Merchandise to comply with any of the Assurances set forth above or any other express, implied or statutory warranties, in any such event whether or not any demand for payment is made to Vendor and/or any lawsuit is actually filed against VS. The defense of any matter shalt be by counsel selected by VS. VS shall have the right to refuse or return any Merchandise that does not conform to all of the Assurances set forth above for direct payment by check or electronic fund transfer to VS, including transportation, handling and disposition costs, and any Merchandise that has been seized or condemned shall be deemed to have been returned lo Vendor hereunder.

9

*Bedsole*, 374 So. 2d 644, 647 (Fla. Dist. Ct. App. 1979). And, it requires a judgment against TVS which, of course, violates the injunction. Proccor does not even suggest otherwise.

## IV.   CONCLUSION

Proccor cannot prosecute any claim in this case against TVS. Proccor should have dropped its claims against TVS or sought leave from the bankruptcy court to proceed. Proccor has done neither. In fact, the activities of Proccor here, suggesting that because of an indemnification provision in a contract between GAT and TVS (which contract Proccor admits was assigned by TVS to a third party, therefore making TVS no longer even a party), this case can proceed against TVS, violate the injunction.

We addressed this with Proccor's counsel by email dated July 8, 2025, and had numerous follow up calls with counsel thereafter regarding the status of its claims against TVS. A copy of July 8, 2025, Email message is attached as Exhibit 2.

10

In short, unless and until the claims (direct and indirect-Counts III-V) against TVS[3] are dismissed, this case remains subject to the injunction.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | LEWIS BRISBOIS BISGAARD & SMITH LLP |
|  | /s/ Patrick C. Campbell |
|  | Patrick C. Campbell (*pro hac vice*) |
|  | Alexander D. MacMullan (*pro hac vice*) |
|  | 575 E. Swedesford Road, Suite 102 |
|  | Wayne, Pennsylvania 19087 |
| Date: 09/18/25 | Telephone: (215) 977-4077 |
|  | patrick.campbell@lewisbrisbois.com |
|  | alexander.macmullan@lewisbrisbois.com |

---

[3] Contributory trademark infringement is a judicially created doctrine that derives from the common law of torts. *E.g., Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010). Here, it is based on the argument that TVS was a distributor of certain of GAT's products (See Dkt. No, 92, ¶ 44)-meaning the TVS sales would be totally redundant. As such, the "one-satisfaction-rule" is applicable to all of TVS's sales. See, generally, B*UC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1278 (11th Cir. 2008)(applying rule to copyright infringement case)( "The one-satisfaction rule ... operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury."). Count V, therefore, is precluded as well. *Abbott Lab'ys v. Adelphia Supply USA*, No. 15CV5826CBALB, 2019 WL 5696148, at *51 (E.D.N.Y. Sept. 30, 2019)(distribution chain case like the present one)(quoting *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017) ("Thus, '[i]f two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount'.") In other words, Count V Proccor is looking to collect twice for the same alleged harm. *Id.* at p. 51.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of September, 2025, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send an Electronic Mail notification of same to all counsel of record.

> LEWIS BRISBOIS BISGAARD & SMITH LLP
>
> */s/ Patrick C. Campbell*
> Patrick C. Campbell (*pro hac vice*)
> Alexander D. MacMullan (*pro hac vice*)
> 550 E. Swedesford Road, Suite 270
> Wayne, Pennsylvania 19087
> Telephone: (215) 977-4077
> Email: patrick.campbell@lewisbrisbois.com
> alexander.macmullan@lewisbrisbois.com
>
> *Attorneys for Defendants*

DATED:  09/18/25