UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION

PROCCOR PHARMACEUTICALS, INC.,

Plaintiff,

v.   Case No. 8:22-cv-02227-SDM-SPF

WORLD HEALTH PRODUCTS, LLC

Defendant.

## DEFENDANT'S SUPPLEMENTS AND RENEWED MOTION IN LIMINE TO PRECLUDE INFORMATION AND DOCUMENTS RELATING TO THE REPORT AND TESTIMONY OF NEIL J. BEATON

### I. INTRODUCTION

This motion supplements and renews the Defendant's Motion In Limine to Preclude the Testimony of Neil Beaton Dkt. No. 165, which is incorporated herein by reference. Since that motion was decided by Order dated September 30, 2024 (Dkt. No. 243), there have been no less than two significant legal developments, and a significant factual developments which should be considered by the Court. Defendant World Health Products, LLC ("GAT") submits that, based on those developments in the law, and additional facts, Mr. Beaton should either be precluded from testifying, or his testimony should be limited to trademark agreements

171199252.1

between Plaintiff Proccor Pharmaceuticals, Inc. ("Proccor") and licensees who have expressly agreed to running royalty rates.

## II. BACKGROUND RELATED TO THE MOTION-RECENT DEVELOPMENTS AND ANALYSIS

Proccor's damages expert is Neil Beaton ("Mr. Beaton"). A true and correct copy of Mr. Beaton's June 30, 2023 Report is at Dkt. No. 165-1. Mr. Beaton intends to testify as to 1) the profits on the sale of GAT's Freedom Pop flavored Nitraflex by GAT and GAT's customer, The Vitamin Shoppe Industries, LLC and 2) the amount of royalties Proccor would have earned on those same sales as a result of a hypothetical license agreement between Proccor and GAT for the use of the phrase FREEDOM POP. Dkt. No. 165-1, p. 4 .

First, amendment to Fed. R. Ev. 702 took effect December 2023. The Rule provides.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;

> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. This amendment clarifies the rule that the proponent of expert testimony *must* demonstrate that it is more likely than not that the proposed expert testimony will meet the admissibility requirements of Rule 702. *Kristopher Jolly et al., Plaintiffs, v. Hoegh Autoliners Shipping AS, et al., Defendants.*, No. 3:20-CV-01150-JAR-MCR, 2024 WL 3859797, at *3 (M.D. Fla. Jan. 26, 2024).The amendment also stresses the importance that an expert's opinion must "stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology" under Rule 702(d). *Id.* ("[The amendment] does not permit the expert to make claims that are unsupported by the expert's basis and methodology.")

> The word "sufficient" in Rule 702(b) signifies that the expert may properly base her opinion on something less than all the pertinent facts or data. Thus, sufficiency is not a matter of whether the judge believes in the facts or data on which the expert relies.[5] Rather, sufficiency is a function of the nature and scope of the opinion offered, the quantity of data both available and pertinent to the issue at hand, and what is deemed sufficient by experts in the pertinent field when working outside the courtroom. Included in the analysis under Rule 702(b) should be whether the expert ignored a significant portion of seemingly important data. …If an expert "cherry picks" favorable data in this manner but ignores a significant quantity of other important

3

facts, the trial court would be justified in concluding that the expert's testimony is not based on sufficient facts or data

§ 6268 Subdivision (b)—Sufficient Facts or Data, 29 Fed. Prac. & Proc. Evid. § 6268 (Wright & Miller) (2d ed.).

Also, if there were still any doubt, a recent *en banc* opinion written by the Chief Judge of the Federal Circuit has clarified the rule that reasonable royalties are typically calculated through a "hypothetical negotiation" which "attempts to ascertain the royalty upon which the parties would have ***agreed*** had they successfully negotiated an agreement just before infringement began." *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1340 (Fed. Cir.)(Moore, CJ), cert. denied, 146 S. Ct. 333, 223 L. Ed. 2d 165 (2025). As discussed below, the operative term "agreed" means an act by both parties consenting to a hypothetical agreement.

In *EcoFactor* the *en banc* Federal Circuit also clarified that lump-sum payments, even lump sum licenses, and running-royalty licenses are "significantly different" and cannot bear on each other in calculating reasonable royalty damages. *See EcoFactor*[1] *supra at* 1342. The Federal Circuit

---

[1] Proccor will try to argue that the *EcoFactor* case is distinguishable because it is a patent case, not a trademark. That is a distinction without a difference. The hypothetical license agreement is derived from patent law and it

4

further ruled that where the plaintiff relies on the hypothetical license agreement with the infringer to calculate a reasonable royalty, the agreement relied on must show that the licensees in the allegedly comparable agreements expressly *<u>agreed</u>* that the payment was a royalty. *Id.* at. 1343 (reasonable royalty analysis "requires consideration not only of the amount that a willing licensee would have paid for the patent license but also of the amount that a willing licensor would have accepted"). In other words, the economic benefits from a trademark license agreement are not a *de facto* "reasonable royalty". Thus, Mr. Beaton's methodology of extrapolating a running royalty from lump sum payments divided by estimated sales has been rejected.

An example of the extrapolation methodology Mr. Beaton employs to convert some economic benefit by Proccor into a running royalty for

---

informs the analysis in trademark cases. E.g., *Open Sea Distribution Corp. v. Artemis Distribution, LLC,* 692 F. Supp. 3d 1151, 1243 (M.D. Fla. 2023)(Corrigan, J)(trademark case relying on *Georgia-Pacific* analysis); and *PODS Enters., Inc. v. U-Haul Int'l, Inc.,* No. 812CV01479T27MAP, 2014 WL 12628663, at *2 (M.D. Fla. June 27, 2014)(same). There is no good reason why it should be easier to prove a reasonable royalty in a trademark case than it is in a patent case.

purposes of his analysis is his examination of the Alpha Lion Agreement. That agreement did not have a running royalty or even a lump sum payment. The economic terms were that Alpha Lion was given permission to use the phrase FREEDOM in exchange for Alpha Lion manufacturing 750 units of product for Proccor. Dkt. No. 179-6, ¶ 4.[2] The alleged profit to Proccor on those 750 units manufactured by Alpha Lion was $25/unit. On 750 units, the total alleged profit was $18,750. Ross Krigsman, Proccor's owner, contends he was told that Alpha Lion used FREEDOM on 1000 units. Dkt. No. 179-6, ¶ 4. Mr. Beaton divides the $18,750 Mr. Krigsman said he made on the products manufactured by Alpha Lion, by the 1,000 units Mr. Krigsman said Alpha Lion told him they sold that used FREEDOM, to come up with what he claims is per unit of $18.75/unit. Dkt. No. 179-6, ¶ 4. Mr. Beaton then uses the $18.75/unit as a comparable for his implied conclusion

---

[2] Alpha Lion was sent a cease and desist notice on June 20, 2019-two days before the date of the agreement. Dkt. No. 165-1, Schedule 5. A true and correct copy of the Alpha Lion Cease and Desist Notice is attached as Exhibit A.

that GAT would have agreed to $25/unit[3] royalty here. Dkt. No. 165-1, schedule 5.

The $18.75 is not just one of many pertinent comparables. It is one of Mr. Beaton two comparables that are even in double digits-the other being the E-Flow agreement. The E-Flow agreement was another extrapolation exercise to turn a $5,000 settlement agreement payment into a $35.46 per unit royalty.[4]

---

[3] Mr. Beaton never actually states that GAT would have *agreed* to anything, which makes perfect sense. His hypothetical $25/unit is close to 100% of the profit GAT earned. Dkt. No. 165, p. 4.  GAT would put itself out of business if it "agreed" to a royalty equal to its profit. Mr. Beaton, of course, offers no evidence that use of the term FREEDOM POP added any independent value in the alleged prior licenses. "The hypothetical [methodology] does not focus on the subjective willingness or valuations of the parties, but rather the fair market value of the use." *Edmondson v. Caliente Resorts, LLC* 2017 WL 10591833, *5 (S.D. Fla. 2017) (hypothetical license considered for determining damages in trademark case).

[4] The other agreements Mr. Beaton has in his schedule 5 represent royalties that are, even according to his extrapolation exercise, $0 (8 agreements)-$3.33 (one agreement). Mr. Beaton said that he chose the "high end of [Proccor's] royalty range". Dkt. 165-1, ¶ 28. The "range" is, according to Mr. Beaton extrapolation methodology, $0-$35.46.

According to Proccor's own admission, only three of the eleven agreements Mr. Beaton relied on in his analysis (Dkt. No. 165-1, schedule 5) mention royalty payment. Dkt. No. 179-6, ¶ 5.

Therefore, the Court should issue a ruling *in limine* that of the eleven agreements relied on by Mr. Beaton, the only agreement admissible at trial are agreements that provide for running royalties expressly agreed to by the licensees.

Since the Motion *In Limine* was filed, Proccor has also entered into no less than four "Trademark License Agreements" with Hydrate Pro, Liqr Ade, Fit Factory and Raw Sport Supplement Company. True and correct copies of the forgoing agreement are attached as Exs B-E. The payment in each of the first 3 agreements is a lump sum. However, in the Raw Sport Supplement Company, the "royalty" is a per unit royalty in the amount of $1.75, which is less than ten percent (10%) of the amount claimed by Mr. Beaton.

Mr. Beaton has not addressed any of these new agreements. Most especially, by not addressing the Raw Sport Supplement Company agreement, he is cherry-picking facts. He is ignoring perhaps the most significant Trademark License Agreements, the most recent agreements,

8

because they dramatically undercut his conclusion. His proposed testimony should be excluded under Fed. R. Civ. P. 702(b).

## III. RELIEF REQUESTED

GAT submits that based on recent developments in the law, and additional facts, Mr. Beaton should either be precluded from testifying, or his testimony should be limited to trademark agreements between Plaintiff Proccor and licensees who have expressly agreed to running royalty rates.

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that I conferred by with counsel for the Plaintiff, G. Donovan Conwell, Jr., regarding the relief sought in this motion, and did not reach an agreement.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Patrick C. Campbell*
Patrick C. Campbell (*pro hac vice*)
Alexander D. MacMullan (*pro hac vice*)
575 E. Swedesford Road, Suite 102
Wayne, Pennsylvania 19087
Telephone: (215) 977-4077
Email: patrick.campbell@lewisbrisbois.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February, 2026, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send an Electronic Mail notification of same to all counsel of record.